NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANA HERRERA, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 04-3002 (WHW) |
| | : | |
| THE CITY OF NEW BRUNSWICK, | : | |
| OFFICER ANTHONY A. STARZYNSKI, | : | |
| OFFICER PAM KNIGHTON, OFFICER | : | |
| JAMES HAYES, OFFICER GEORGE | : | |
| SANTIAGO, POLICE DIRETOR JOSPEH | : | |
| CATANESE, and JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Defendants the City of New Brunswick, Officer Starzynski, Officer Knighton, Officer

Hayes, Officer Santiago, and Director Catanese have moved, under Federal Rule of Civil

Procedure 56(c), for summary judgment on the entirety of Plaintiff Ana Herrera's complaint.

These motions are granted in part and denied in part.

### FACTUAL & PROCEDURAL BACKGROUND

*June 26, 2002 Arrest*

On June 26, 2002 at approximately 6:30 PM, Plaintiff Ana Herrera was walking with

Antonio Amador and Erendira Lopez along Livingston Avenue near Comstock Street in New

Brunswick, New Jersey. A wake for Mr. Jose Solano[1] was being held in a funeral home in the

---

[1]According to the defendants, Mr. Solano was a suspected gang member of XVIII, also
known as the 18th Street gang. Detective Cradic had been dispatched to the area to ensure the
safety of the wake, as Mr. Solano was believed to have been the victim of a gang related

**NOT FOR PUBLICATION**

vicinity. The group of three decided to return home in order to change clothes so that they could attend the wake. It was at that point that they were stopped by the police.

The three were initially stopped by Officers James Hayes and George Santiago who had been directed to do so by Detective (now Sergeant) Royce Cradic. According to the defendants, Detective Cradic did a warrant check and discovered an outstanding warrant for the arrest of Mr. Amador before the group was stopped.[2] According to the plaintiff, the warrant was not confirmed until after the officers had stopped and interacted with the three. Officers Anthony Starzynski and Pam Knighton arrived on the scene later, as the three were already being questioned.

The parties disagree regarding the sequence of events that led to Ms. Herrera's arrest. However, the following facts are undisputed: The officers handcuffed Mr. Amador. Ms. Herrera repeatedly asked the officers where they were going to take Mr. Amador. She began to cry. She was eventually handcuffed and arrested. She was transported to headquarters, where she was processed and released on her own recognizance. Officer Starzynski signed a Summons Complaint against the plaintiff for obstruction of justice for interfering with the arrest of Mr. Amador.

Plaintiff alleges that she was verbally abused by the officers, that they laughed at her and accused her of lying. The officers contend that it was in fact the plaintiff who verbally abused the officers and refused to step back and leave the area while they were arresting Mr. Amador.

---

homicide.

[2]According to the defendants, Detective Cradic recognized Mr. Amador to be associated with members of the La Mugre gang, the gang suspected of being responsible for the killing of Mr. Solano.

NOT FOR PUBLICATION

Plaintiff further claims that she was violently patted down at the scene by Officer Strazynski which caused her to hit her forehead on the patrol car and caused a bruise on the back portion of her right thigh. According to the defendants, Mr. Herrera was not patted down at the scene but was patted down at the station by a female officer, Officer Knighton.

*Ms. Herrara's Medical Treatment*

Ms. Hererra sought medical attention for injuries she claims were sustained during her arrest on seven separate occasions: June 26, June 28, June 29, August 2, August 22, August 27 and August 28, 2002. Over the course of these hospital visits, Ms. Hererra was diagnosed with neck pain, post concussion syndrom, neck strain, major depressive disorder, and recurrent unspecified and posttraumatic stress disorder.

*Municipal/State Litigation*

On September 23, 2002, the plaintiff returned to New Brunswick Police Headquarters with her attorney and filed complaints against Officer Strazynski for harassment, in violation of N.J.S.A. 2C:33-4(d), and aggravated assault, in violation of N.J.S.A. 2C:12-1(b)(7), based on his conduct during the course of the June 26, 2002 arrest.

The obstruction of justice charge against the plaintiff and the charges filed by the plaintiff against Officer Starzynski were tried together in the Borough of Highland Park Municipal Court on May 3, 2005, June 28, 2005, July 26, 2005, February 7, 2006, March 7, 2006 and March 8, 2006.  At the end of the trial, on March 8, 2006, the plaintiff was found guilty of obstruction of justice.  Officer Starzynski was found not-guilty of both charges filed against him. The plaintiff was fined a total of $508 and required to undergo anger management counseling.

NOT FOR PUBLICATION

The plaintiff appealed the verdict to the Superior Court of New Jersey, Criminal Division. Her conviction was affirmed on October 18, 2006.  On December 1, 2006, the plaintiff filed an appeal with the Superior Court of New Jersey, Appellate Division. This appeal is still pending.

*Federal Litigation*

On June 24, 2004, the plaintiff filed this complaint in this District against: the City of New Brunswick, Officer Anthony A. Starzynski, Officer Pam Knighton, Officer James Hayes, Officer George Santiago, Police Director Joseph Catanese, and John Does 1-10. All the individual defendants were sued in both their individual and official capacities. Director Catanese is the Director of the New Brunswick Police Department ("NBPD"). He is responsible for overseeing the day to day operations of the police department, implementing general orders, special orders, policies, procedures, rules and regulations.  He also oversees the records maintained by the NBPD and the training provided to NBPD officers.  He is not alleged to have been present on the scene of Ms. Herrera's arrest.

In her complaint, the plaintiff brought claims under 42 U.S.C. §1983 alleging constitutional violations based on the allegedly unlawful stop, unlawful search, false imprisonment, malicious prosecution and excessive force used during the arrest. She has also brought §1983 claims against the City of New Brunswick and Police Director Catenese for failure to train and supervise the officers and for withholding certain discovery from her during her criminal trial. She also makes an equal protection claim. She has also alleged state law claims for assault and battery by Officer Starzynski.

NOT FOR PUBLICATION

On March 30, 2007 and April 3, 2007, Defendants Starzynski and Catenese filed motions for summary judgment with accompanying briefs as to all counts of the plaintiff's complaint. The remaining defendants filed motions for summary judgment joining in these briefs. The Court heard oral argument on January 29, 2008.

## LEGAL STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See id. at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The non-moving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that they is a genuine issue for trial. Celotex, 477 U.S. at 324; Fed. R. Civ.

-5-

NOT FOR PUBLICATION

P. 56(e).  Such affidavits must be based "on personal knowledge," establish "such facts which would be admissible," and "show affirmatively that the affiant is competent to testify in all matters stated therein." Maldonado v. Ramirez, 757 F.2d 48, 50 (3d Cir. 1985); see also J. Moore, W. Taggerts & J. Wicker Moore's Federal Practice § 56.22[1] (2d ed. 1985). "[C]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253 (1968).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

## ANALYSIS

### I.      § 1983[3] Action Against Individual Defendants

A plaintiff can bring an action under 42 U.S.C. § 1983 for violations of her constitutional rights. Section 1983 subjects to liability:

---

[3] In Count One of the Complaint, the plaintiff also cites to § 1986 as a basis for bringing her claim. However, actions under § 1986 must be "commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986. This action was commenced in June 2004; the incident is alleged to have occurred in June 2002. As the action was commenced more than one year after the cause of action accrued, the § 1986 claim is time-barred.

-6-

NOT FOR PUBLICATION

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law.

42 U.S.C. § 1983. To establish a viable § 1983 claim, a plaintiff must demonstrate that "the conduct complained of was committed by a person acting under color of state law and that this conduct deprived the plaintiff of his rights, privileges and immunities secured by the Constitution or laws of the United States." Id.

> ### A.      Equal Protection Claim

"The Equal Protection Clause 'prohibits selective enforcement of the law based on considerations such as race." Thomas v. Independence Twp., 463 F.3d 285, 297 (3d Cir. 2006) (citing Wren v. United States, 517 U.S. 806, 813 (1996)). To make out an equal protection claim, a plaintiff must prove that the actions of the law enforcement officials "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002)(citing Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-66 (1977)). "To prove discriminatory effect, [the plaintiff must] show that she is a member of a protected class and that she was treated differently from similarly situated individuals in an unprotected class." Id.

The plaintiff, a Hispanic woman, has offered no evidence in support of the claim that other individuals, who were not members of her class and who were "similarly situated," were treated differently.  That Ms. Lopez-Ramirez, also a Hispanic woman stopped alongside Ms. Herrera, was not arrested or charged with any crimes points against the conclusion that the

-7-

**NOT FOR PUBLICATION**

NBPD acted in a discriminatory manner.  The plaintiff does not attempt to respond to the defendants' summary judgment motion on the equal protection claim.  As the plaintiff has advanced no evidence from which a reasonable jury could conclude that her equal protection rights were violated, summary judgment is granted on behalf of the defendants.

> **B.  Excessive Force Claim**

A "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person ... [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." Graham v. O'Connor, 490 U.S. 386, 388 (1989).[4]  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.... The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.  In making the determination as to whether the particular use of force was "reasonable" courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the

---

[4] In Count One of her Complaint the plaintiff seems to be making the excessive force as a violation of the Fifth and Fourteenth Amendments, however the Court will analyze the claim as if the plaintiff had properly alleged that the conduct was a Fourth Amendment violation.

NOT FOR PUBLICATION

suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." Id.

An officer is entitled to commit a battery pursuant to a lawful arrest so long as he does

not use excessive force. Edwards v. City of Phila., 860 F.2d 568, 572 (3d Cir.1988). "[O]ur

Fourth Amendment jurisprudence has long recognized that the right to make an arrest or

investigatory stop necessarily carries with it the right to use some degree of physical coercion or

threat thereof to effect it." Saucier v. Katz, 533 U.S. 194, 208 (2001) (citing Graham, 490 U.S. at

396). However, where a plaintiff "alleges actual injury inflicted by a police officer in the course

of an arrest, and supports his allegation with specific facts so that it cannot be said as a matter of

law that the use of force was objectively reasonable, the issue of whether excessive force was

employed must be left to the trier of fact." Kopec v. Tate, 361 F.3d 772, 778 n. 7 (3d Cir.2004).

Viewing the facts in the light most favorable to the non-moving party, as required in a

motion for summary judgment, the following occurred: Ms. Herrera was charged with the crime

of obstruction, specifically for "refusing to leave the area after being told to do so and attempting

to make contact with the detainee." There was no allegation that she physically attempted to

interfere with the arrest. And, according to the defendants, her "clothing was so tight that she

obviously did not have any weapons." (Defs' Fact Statement at 12.) Furthermore, there was no

allegation that she was attempting to resist arrest through flight, in fact according to the

defendants, she refused to leave the scene. (Id. at 17.) According to the plaintiff, she was first

verbally abused by the officers. Then Officer Strazynski "grabbed her by the waist of her pants,

with one hand, her shoulder with the other, and threw her four feet from where she was standing

against the police car... when she was thrown against the car her neck, head and face struck [the

NOT FOR PUBLICATION

car].... Starzynski then forced her legs apart, and used his knee against her back and the inside of her leg and thigh... with such force that it left a large bruise on the mid part of her right thigh... he [then] pat searched her and handcuffed her ... and put his hands in her pockets and removed what was in them." (Pls' Fact Statement at 20-21.) As a result of the incident Ms. Herrera claims she was forced to seek medical attention on several occasions and diagnosed with neck pain and "post concussion syndrome."

The defendants argue that even if the events occurred as Ms. Herrera claims, this was nothing more than verbal instructions and pushing. They contend that such a *de minimis* use of force is insufficient to support a finding of a constitutional violation.  They also assert that Ms. Herrera's injuries were *de minimis* and thus insufficient to support a excessive force claim.

The Supreme Court, writing in the Eighth Amendment context, has refused to sanction the use of excessive force even if the end result does not leave visible marks or scars. To hold otherwise, the Court wrote, "would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today." Hudson v. McMillan, 503 U.S. 1, 8 (1992). The Third Circuit recently applied this approach in Smith v. Mensinger, 293 F.3d 641 (3d Cir.2002). There, the court denied defendants' summary judgment motion where the extent of a plaintiff's injuries was disputed. Id. at 649. The court made it clear that the minor degree of plaintiff's injury, while relevant to the totality of the circumstances, could not, on its own, serve as a complete defense to an excessive force claim:

> We do not, of course, suggest that a fact finder could not consider the de minimis nature of injuries along with all of the other circumstances [ ]. A properly instructed fact finder could, after considering all of the evidence, conclude that Smith's injuries were so minor that the defendants' account of the incident is more

-10-

NOT FOR PUBLICATION

> credible than Smith's, and/or that the force used was not of constitutional
> dimension. That may have been exactly what the district court did here. However,
> that is an issue of fact to be resolved by the fact finder based upon the totality of
> the evidence; it is not an issue of law a court can decide.

Id.  In Moore v. Novak this Court, citing to opinions from the Second and Ninth Circuits[5], found

"the Third Circuit's rationale applicable in Fourth Amendment scenarios as well." 2007 WL

2572372, * 7 (D.N.J. Sept. 4, 2007) (Walls, J.) (citing Hayes v. N.Y. Police Dept., 212 Fed.

Appx. 60, 62 (2d Cir. 2007) ("we have permitted claims to survive summary judgment where the

only injury alleged is bruising") and Tekle v. United States, 457 F.3d 1088, 1095 (9th Cir. 2006)

("the pointing of a gun at someone may constitute excessive force, even if it does not cause

physical injury")).

Whether the force used by Officer Starzynski during the arrest was excessive is a question

for the jury. The minimal injuries to Ms. Herrera and the description of the force used point

against a finding that the force was excessive.  However, a reasonable jury could look to the fact

that Ms. Herrera was arrested for a minor infraction, that she was a slight woman who did not

appear to be endangering the officer's safety and conclude that, in fact, the force was excessive in

light of the circumstances. Summary judgment is denied on the excessive force claim.

### C.    Illegal Stop Claim

The plaintiff alleges that she was unlawfully stopped, questioned and detained before her

arrest without cause. The defendants counter that Mr. Amador, not Ms. Herrera, was the subject

---

[5] In Moore this Court recognized that "[n]ot all circuits agree that a claim may proceed if the plaintiff's injuries are minimal. Some circuits to have found it essential (if not wholly dispositive) that plaintiff display more than a de minimis injury to maintain an excessive force claim under the Fourth Amendment." 2007 WL 2572372, * 7 fn. 4 (citing Cortez v. McCauley, 478 F.3d 1108, 1129 (10th Cir. 2007)( en banc ); Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999)).

NOT FOR PUBLICATION

of the initial stop. This stop, they contend, was lawful because it was based on reasonable suspicion as there was an outstanding warrant for his arrest. They point out that Mr. Amador has not challenged the validity of the stop and Ms. Herrera does not have standing to do so.  They argue that Ms. Herrera was only subject to a lawful field inquiry during which she was asked for her name and date of birth, after which she was permitted to, and in fact instructed to, leave. The fact that she did not leave as instructed, the defendants argue, is what led to her arrest for obstruction.

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. " Florida v. Royer, 460 U.S. 491, 497 (1983) (internal citations omitted). However, "[t]he person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." Id. at 497-98 (citing Terry v. Ohio, 392 U.S. 1, 32-33 (1968)(Harlan, J., concurring); 34, (WHITE, J., concurring)). The test for whether the police encounter has moved beyond a permissible field inquiry is whether the party has been "detained."  "If there is no detention – no seizure within the meaning of the Fourth Amendment – then no constitutional rights have been infringed." Id.

In this case, the defendants have pointed to deposition and trial testimony of the officers involved who testified that Ms. Herrera was free to leave, that in fact she was instructed to leave, but would not do so. (See Trial Testimony of Hayes, Ex. Q, 23:2-9; Deposition Testimony of

NOT FOR PUBLICATION

Knighton, Ex. J, 116:12-17, 117:9-14, 179:11-13; Trial Testimony of Knighton, Ex. N, 143:6-11;

Trial Testimony of Amador, Ex. U, 75:5-13, 78:17-19; Deposition Testimony of Amador, Ex. P,

51:5-13.)  The only evidence that the plaintiff offers in response is the dispatch tape of the arrest.

(Pl's Ex. K.) However, this tape does not establish that Ms. Herrera was not free to leave; it only

establishes that the police inquired about her name, address and date of birth and that they

radioed this information in to dispatch for confirmation and a warrant check.  Ms. Herrera has

merely asserted that she was not free to leave in her brief, but she has neither filed a sworn

statement to this effect, nor pointed to deposition testimony or any other evidence which would

support this contention. The evidence presented by Ms. Herrera is insufficient to carry her burden

at summary judgment, as no reasonable jury could conclude from this evidence that she was not

free to leave the scene.  Summary judgment is granted with respect to the plaintiff's illegal stop

claim.

### D.    Illegal Search Claim

The plaintiff makes two arguments as to why her constitutional rights were violated when

she was searched. First, she claims that she should not have been arrested for the obstruction

offense, rather given a summons, and therefore the search should not have been conducted at all.

Second, she argues that it was a violation of police procedures for her to be searched by a male

officer.

The plaintiff's first argument is that it was a violation of her rights to be searched at all,

because the obstruction charge is a disorderly persons offense for which she was entitled to be

released upon the issuance of a summons rather than being arrested. However, under New Jersey

law "municipal police officers [may] arrest any 'disorderly person' who commits such an offense

NOT FOR PUBLICATION

in the presence of the arresting officer." State v. Dangerfield, 171 N.J. 446, 460 (2002)(citing

N.J.S.A. 40A:14-152).  Then, the officer has the right "following a valid custodial arrest for a

motor vehicle violation or for a criminal offense, to conduct a search of the person of the arrestee

solely on the basis of the lawful arrest." Id. at 463; see also United States v. Robinson, 414 U.S.

218, 225 (1973)("It is well settled that a search incident to a lawful arrest is a traditional

exception to the warrant requirement of the Fourth Amendment.")  The plaintiff's argument

entirely lacks merit.

  The plaintiff's second claim is that she was searched by Officer Starzynski, a male

officer, at the scene of her arrest in violation of New Brunswick Police Department Standard

Operating Procedures (SOP). These procedures provide that female prisoners should not be

searched by male officers, unless there is no female officer available to do the search and there is

good reason to believe that the person is in possession of a weapon or drug, or if there is danger

that evidence will be destroyed if the prisoner is not searched at that time. For purposes of the

summary judgment motion, the Court will assume that Ms. Herrera was searched at the scene by

Officer Starzynski.

  It is well established that a "mere violation of state statute does not infringe the Federal

Constitution." Snowden v. Hughes, 321 U.S. 1, 11 (1944). Similarly, the mere fact that an arrest

was done in violation of police procedures can not, without more, establish a constitutional

violation. See Tanberg v. Sholtis, 401 F.3d 1151,1163 (10th Cir. 2005)(citing Whren v. United

States, 517 U.S. 806, 815 (1996)("[t]he Supreme Court has rejected the use of local police

regulations as a standard for evaluating constitutionality of police conduct, on the ground that

such a basis of invalidation would not apply in jurisdictions that had a different practice.").  The

NOT FOR PUBLICATION

plaintiff conceded at oral argument that a pat down search of a female detainee conducted by a male is not *per se* unconstitutional. See also Timm v. Gunter, 917 F.2d 1093, 1101 (8th Cir. 1990), cert denied, 501 U.S. 1209 (1991) (holding, in the context of searches of male inmates conducted by female prison guards, that cross- gender pat-downs, even if they include the groin area, are not *per se* unconstitutional); Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985) (same); Smith v. Fairman, 678 F.2d 52 (7th Cir. 1982), cert denied, 461 U.S. 907 (1983) (same). Since such a search is not in an of itself unconstitutional, any allegations regarding the excessiveness of the search should be addressed in the context of the excessive force claim.

Neither of the plaintiff's arguments has merit and summary judgment is granted to the defendants on her illegal search claim

**E.      False Arrest Claim**

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir.1988). To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." Lind v. Schmid, 67 N.J. 255, 262 (1975); see also Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir.1997). "Probable cause ... requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).

-15-

NOT FOR PUBLICATION

The defendants contend that probable cause for Ms. Herrera's arrest is demonstrated by the Municipal Court's conclusion that Ms. Herrera was guilty of obstruction of justice and finding that "the testimony show[ed] beyond any reasonable doubt that [Plaintiff's] actions on the day in question purposefully, knowingly and willfully obstructed the administration of law." According to the defendants, because the beyond a reasonable doubt standard requires greater certainty than the probable cause evaluation made by a police officer at the scene, Ms. Herrera's conviction presumptively established probable cause for the arrest.

However, "a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest." Montogomery v. De Simone, 159 F.3d 120, 126 fn. 5 (3d Cir. 1998). This Court can not rely on the municipal court conviction to conclude that there was probably cause to arrest Ms. Herrera until her conviction is upheld on appeal. In Montgomery, the Third Circuit explicitly rejected the presumption that even an overturned conviction establishes probable cause. Id. at 125. The Court held that "[a]pplying a presumption of probable cause in a section 1983 action on the sole basis of a municipal conviction that has subsequently been overturned undermines one of the Civil Rights Act's raisons d'etre, i.e., to interpose the federal courts, as guardians of federal rights, between the authority of the states and the people." Id.

Furthermore, following the Supreme Court's recent decision in Wallace v. Kato, 127 S.Ct. 1091 (2007), this Court will stay the plaintiff's false arrest claim pending the resolution of her appeal in the Appellate Division. In Wallace, the Supreme Court recognized that a plaintiff who claims that he was falsely arrested "was injured and suffered damages at the moment of his arrest, and was entitled to bring suit at that time." Id. at 1096 fn. 3. However, the Court

NOT FOR PUBLICATION

recognized the possible interplay between this decision and its earlier decision in Heck v. Humphrey in which it held that § 1983 suits brought for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid, [require] a § 1983 plaintiff [to] prove that the conviction or sentence has been reversed." Heck v. Humphrey, 512 U.S. 477, 486 (1994).  The Court advised that "[i]f a plaintiff files a false arrest claim before he has been convicted... it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case... is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, Heck will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." Id. at 1098 (internal citations omitted). While the Supreme Court's decision in Wallace did not deal with a situation in which the criminal conviction was on appeal in state court, the reasoning is equally applicable.

In this case a conclusion that there was no probable cause for Ms. Herrera's arrest would necessarily imply that her conviction was invalid, since the two are based on the same facts – Ms. Herrera's actions during the arrest of Mr. Amador.  Under Heck, if Ms. Herrera's conviction is not reversed, her false arrest claim will be barred. As such, the false arrest claim is stayed pending the resolution of the appeal to the Appellate Division of Ms. Herrera's conviction.

**F.    Malicious Prosecution Claim**

The plaintiff's malicious prosecution claim will similarly be stayed pending the Appellate Division's decision on Ms. Herrera's appeal. One of the elements of a malicious prosecution claim is that the criminal proceeding was terminated in favor of the accused. Heck, 512 U.S. at 486; Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  Ms. Herrera "has no cause of action under § 1983 [for malicious prosecution] unless and until the conviction or sentence is

-17-

NOT FOR PUBLICATION

reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." <u>Heck</u>, 512

U.S. at 489.  However, rather than dismissing Ms. Herrera's claim without prejudice and

providing her the opportunity to refile her complaint when, and if, her conviction is reversed, the

Court will stay the malicious prosecution claims pending the resolution of Ms. Herrera's appeal.

### G.    Bystander Liability Claim

The plaintiff has dropped the bystander liability claims against Officers Hayes and

Santiago. She is however continuing to pursue a bystander liability claim against Officer

Knighton on the grounds that Knighton was the ranking officer present at the scene and

personally observed as Officer Starzynski violated Ms. Herrera's rights when he used excessive

force to search her.

A police officer can be held liable under § 1983 if she fails to intervene when a

constitutional violation occurs in her presence. <u>See</u> <u>Smith v. Mensinger</u>, 293 F.3d 641, 650-52

(3d Cir.2002) ("If a police officer, whether supervisory or not, fails or refuses to intervene when

a constitutional violation such as an unprovoked beating takes place in his presence, the officer is

directly liable under Section 1983.") (quoting <u>Byrd v. Clark</u>, 783 F.2d 1002, 1007 (11th

Cir.1986)). A police officer has a duty to intervene if she had knowledge of and acquiesced in a §

1983 violation. <u>See</u> <u>Mensinger</u>, 293 F.3d at 650-51; <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186,

1190-91 (3d Cir.1995); <u>see also Garbacik v. Janson</u>, 111 Fed. Appx. 91, 94 (3d Cir.2004). She

cannot "escape liability by turning either a blind eye or deaf ear to the illegal conduct of [her]

colleagues." <u>Mensinger</u>, 293 F.3d at 652. In order to establish a claim for bystander liability for

the actions of a fellow officer, the plaintiff must establish that the officer "observe[ed] or had

reason to know: (1) that excessive force [was] being used; (2) that a citizen was being

**NOT FOR PUBLICATION**

unjustifiably arrested; or (3) that any constitutional violation [was being] committed by a law

enforcement official. In order for liability to attach, there must have been a realistic opportunity

to intervene and prevent the harm from occurring." Anderson v. Branen, 17 F.3d 552, 557 (2d

Cir. 1994)(internal citations omitted).

 As discussed, whether Officer Starzynski acted with excessive force is a question of fact

which requires jury determination. Officer Knighton's testimony that she was present and

observed the arrest of Ms. Herrera, if viewed in the light most favoarble to the plaintiff, is

sufficient evidence from which a reasonable jury could conclude that Knighton was aware of

Starzynski's actions. "Whether [she] had sufficient time to intercede or was capable of

preventing the harm being caused by another officer is an issue of fact for the jury, unless

considering all the evidence, a reasonable jury could not possibly conclude otherwise. Id.  The

evidence here is not so overwhelming. Summary judgment is denied on the bystander liability

claim against Officer Knighton.

NOT FOR PUBLICATION

II.      § 1983 Liability of Director Catenese[6] and New Brunswick

        A.      Liability for Acts of Officers During the Incident

        In Monell v. Department of Social Services, the Supreme Court rejected the proposition

that a municipality could be held liable "*solely* because it employs a tortfeasor" and concluded

that a "municipality cannot be held liable under §1983 on *respondeat superior* theory." 426 U.S.

658, 691 (1978).  A municipality may only be liable for the constitutional torts of its employees

in one of three ways:

> First, the municipality will be liable if its employee acted pursuant to a formal
> government policy or a standard operating procedure long accepted within the
> government entity, Jett v. Dallas Independent School Dist., 491 U.S. 701, 737
> (1989); second, liability will attach when the individual has policy making
> authority rendering his or her behavior an act of official government policy,
> Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); third, the
> municipality will be liable if an official with authority has ratified the

---

        [6] The suit against Director Catenese in his official capacity should be treated as a suit
against the City of New Brunswick. Kentucky v. Graham, 473 U.S. 159, 166 (1985).
        There are two theories of supervisory liability under which a plaintiff can sue a municipal
defendant in a personal capacity action. See A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d
572, 578 (3d. Cir. 2004). Under the first theory, defendants can be sued as policy-makers "if it is
shown that such defendants, 'with deliberate indifference to the consequences, established and
maintained a policy, custom, or practice which directly caused [the] constitutional harm.' " Id.
(citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). The second
theory provides for personal liability if plaintiffs can show that a supervisor "participated in
violating their rights, or that he directed others to violate them, or that he ... had knowledge of
and acquiesced in his subordinates' violations." Baker, 50 F.3d at 1190-91 (citing Andrews v.
City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir.1990)).
        The plaintiff is not alleging that Director Catenese was personally involved in the incident
or that he directed the police to use excessive force with Ms. Herrera. The allegation is that
Director Catenese he failed to train and to supervise officers under his control in deliberate
indifference to the constitutional rights of affected citizens. Such an allegation can subject the
supervisor to personal liability. See e.g. Davis v. Lower Merion Twp., 1995 WL 311805, *3
(E.D.Pa. May 18, 1995) (citing Sample v. Diecks, 885 F.2d 1099, 1116-18 (3d Cir.1989)).
Whether Director Catenese is liable in his personal capacity requires the same analysis as the §
1983 claim against the City.

NOT FOR PUBLICATION

      unconstitutional actions of a subordinate, rendering such behavior official for
      liability purposes. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).

      The plaintiff does not contend that the officers who committed any of the acts she now

challenges were City policymakers, nor does she argue that a City official with policymaking

authority ratified their actions. Her argument of liability against New Brunswick rests on the first

category – a City policy or custom. The plaintiff's argument appears to be two-fold, that officers

were not adequately trained regarding handling female suspects and that officers with records of

misbehavior were not adequately supervised.

      "A course of conduct is considered to be a 'custom' when, though not authorized by law,

'such practices of state officials are so permanent and well-settled' as to virtually constitute

law.... Custom... may also be established by evidence of knowledge and acquiescence." Beck v.

City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

      Courts have recognized § 1983 actions based on the failure to adequately train police

officers, City of Canton v. Harris, 489 U.S. 378 (1989), the failure to adequately investigate and

discipline officers for a pattern of misconduct, Beck, 89 F.3d at 974-74, or policymakers

knowledge of and acquiescence to a pattern of illegal police behavior, Bielevicz v. Dubinon, 915

F.2d 845 (3d Cir. 1990). The test is whether the policymakers acted with "deliberate indifference

to the rights of the persons with whom the police come in contact." Canton, 489 U.S. at 388.

      In an effort to limit municipal liability to "only those constitutional torts actually caused

by the municipality," Courts require that the plaintiff "establish a municipal custom coupled with

causation– i.e., that policymakers were aware of similar unlawful conduct in the past, but failed

to take precautions against future violations, and that this failure, at least in part, led to [the

**NOT FOR PUBLICATION**

plaintiff's] injury." <u>Beck</u>, 89 F.3d at 972. The Third Circuit has stressed that "proof of the

existence of an unlawful policy or custom alone is insufficient to maintain a § 1983 action. The

plaintiff bears the burden of proving that the municipal practice was the proximate cause of he

injuries suffered." <u>Id.</u> at 972 fn. 6 (citing <u>Bielevicz</u>, 915 F.2d at 850). However, "[a]s long as the

causal link is not too tenuous, the question whether the municipal policy or custom proximately

caused the constitutional infringement should be left to the jury." <u>Bielevicz</u>, 915 F.2d at 851.

In support of her argument that the City failed to adequately supervise officers knowing

of their prior records of misbehavior, the plaintiff attaches as exhibits the internal affairs files of

the officers involved in the incident. She alleges that the officers have a total of 19 internal

affairs complaints between them since 1996. Ten of these complaints, she claims, belong to

Starzynski alone and occurred since 1997.  She highlights two particular incidents involving

Officer Starzynski. The first was an incident involving Starzynski's behavior during the arrest of

Vikrant Pawar, who was a Rutgers law student at the time.  Criminal and civil complaints were

filed against Starzynski alleging that Starzynski beat Pawar in a holding cell – kicking, striking

and shoving Pawar and intimidating by using racial slurs and name calling. Pawar was charged

with obstruction and resisting arrest.  (Pls' Ex. D.) The second incident involved the allegation

that Starzynski took his girlfriend to a motel, held her against her will, handcuffed her, and

sexually and physically assaulted her. Criminal charges were dropped and resolved by way of

"settlement." However, the internal affairs review resulted in Officer Starzynski's suspension for

thirty days without pay. (<u>Id.</u>) The plaintiff argues that these complaints demonstrate a pattern of

wrongful conduct of which the City and Police Director Catenese should have been aware. She

also points to the deposition testimony of Director Catenese who stated that there was a policy to

**NOT FOR PUBLICATION**

allow officers to use "discretion" if they believed there was need to deviate from standard police procedures. (Catenese Dep. Tr. 94-95, Pls' Ex. F.)  The plaintiff argues that this failure to adequately supervise and discipline an officer with a record of constitutional violations led to her injury.

      In <u>Beck v. City of Pittsburgh</u>, the Third Circuit looked to, among other evidence, a pattern of complaints against the police officers to find that a reasonable jury could infer that a municipality had adopted a custom of permitting its police officers to use excessive force in the performance of their duties. 89 F.3d at 967.  In <u>Beck</u>, the police officer had exhibited a pattern of violent and inappropriate behavior with five complaints of the excessive use of force in less than five years. <u>Id.</u> at 972. Generally, these complaints had been resolved unfavorably for the complaining citizen. <u>Id.</u> at 973. Yet, the Court concluded that "[w]ithout more, these written complaints were sufficient for a reasonable jury to infer that the Chief of Police ... and his department knew, or should have known, of [the Officer's] violent behavior in arresting citizens." <u>Id.</u>  And "[b]ecause the complaints... came in a narrow period of time and were of a similar nature, a reasonable jury could conclude that the Chief of Police knew, or should have known of [the Officer's] propensity for violence when making arrests." <u>Id.</u> The court rejected the proposition "that [the plaintiff's] claim is barred simple because the City investigated his complaint, regardless of the adequacy of the investigation." <u>Id.</u> at 974. The court went on to examine deficiencies in the review procedures and concluded that "we cannot look to the mere existence of superficial grievance procedures as a guarantee that citizen's constitutional liberties are secure. Protection of citizen's constitutional rights and liberties depends on the substance of

NOT FOR PUBLICATION

the [police department's] investigatory procedures. Whether those procedures had substance was

for the jury's consideration." Id.

The defendants argue that, unlike in Beck, the complaint review process in New

Brunswick is "real," has "teeth" and "provide[s] for redress when injustice is done." They point

to the fact that the following exist: "1) a distinct [Internal Affairs Unit] ("IAU") responsible for

the oversight of internal affairs investigations, 2) a formalized procedure by which either the IAU

or an officer's direct supervisor will be assigned to conduct the investigation; 3) the member

conducting the investigation is responsible for the thoroughness and accuracy of the

investigation; and 4) the findings are ultimately reported to the Director of Police." (Catanese

Reply at 9.) Further, they argue that, unlike in Beck, "the statistics are presented quarterly and

annually to the Middlesex County Prosecutor's Officer for review." (Id.) They argue that these

internal investigation procedures were utilized to review all the previous complaints against the

officers.  Finally, they point to their expert Major Joseph Craparotta who concluded that "the

City of New Brunswick and Director Catanese properly, professionally and adequately trained

and supervised the aforementioned officers and member of the New Brunswick Police

Department involved in this incident" (Defs' Ex. I at 53.)

The plaintiff has presented evidence of an extensive list of complaints against the officers

involved in the incident. The complaints against Officer Starzynski are particularly illustrative of

a potential breakdown in supervision and training in the New Brunswick Police Department. Ten

civilian complaints, two criminal complaints and one civil lawsuit in this Court have been filed

against Officer Starzynski in the last ten years.  Mr. Pawar's claims are very closely analogous to

the facts of this matter – a citizen who is subsequently charged with obstruction and resisting

NOT FOR PUBLICATION

arrest complains of violent behavior by Officer Starzynski during his arrest. Based on these *written* complaints a reasonable jury could conclude that the Director of the Police Department and other policymaking officials were aware or should have been aware that constitutional violations were being committed by Officer Starzynski during the course of arrests. See Hernandez v. Borough of Palisades Park Police Dept., 58 Fed. Appx. 909, 913 (3d Cir. 2003)("A reasonable fact-finder may conclude that the Police Chief has constructive knowledge of constitutional violations where they are repeatedly reported in writing to the Police Department."). The mere fact that complaints against the officers were evaluated through the Police Departments internal review procedures does not bar the plaintiff's action. See Beck, 89 F.3d at 973-74. "Whether those procedures had substance [is] for the jury's consideration." Id. at 974. As Ms. Herrera's alleged injuries were caused by the type of excessive force that the complaints against Officer Starzynski previously reported, the causal link between the alleged constitutional injury and the alleged City custom is sufficient for the question to go to the jury. See Bielevicz, 915 F.2d at 851.

The plaintiff has raised questions of material fact which require jury determination. Summary judgment on the § 1983 claims against the City of New Brunswick and Director Catenese is denied.

### B.     Due Process Claim for Discovery Withheld During Criminal Trial

Plaintiff sought discovery of prior internal affairs complaints filed against Officer Starzynski during her criminal trial. Her motion for discovery was heard before the Superior Court  which, on July 26, 2004, denied the plaintiff's request. The parties disagree whether the issue of the production of the internal affairs documents was one that the plaintiff appealed – the

NOT FOR PUBLICATION

plaintiff claims that this issue is currently on appeal in the Appellate Division whereas the

defendants contend that it was not one of the issues that was appealed. The plaintiff now argues

that when she was not provided these materials the City of New Brunswick and Catanese

violated "her right to due process and equal protection of the law in violation of the Fifth, Sixth,

and Fourteenth Amendments."

What the plaintiff is essentially asking is that this Court review the Superior Court's

decision.  The power to review state court decisions is vested solely in the Supreme Court. 28

U.S.C. § 1257; Exxon Mobil Corp. v. Saudi Basic Indust. Corp., 544 U.S. 280, 292 (2005) ("§

1257, as long interpreted, vests authority to review state court's judgment solely in this Court.");

Dist. of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust

Co., 263 U.S. 413, 416 (1923).  Under the Rooker-Feldman doctrine district courts have no

jurisdiction in "cases brought by state court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284. Though, "[i]f a federal

plaintiff presents some independent claim, albeit one that denied a legal conclusion that a state

court has reached in a case to which he was a party, then there is jurisdiction and state law

determines whether the defendant prevails under principles of preclusion." Id. at 293. This is not

a case in which the plaintiff is advancing some independent claim which would call into question

the Superior Court judge's ruling; this is a case in which the plaintiff is claiming injury stemming

directly from that ruling. The plaintiff's argument is essentially that the Judge was wrong when

he ruled that she was not entitled to discovery of the internal affairs documents. That is a

decision she must appeal through the state court appellate process and which she may eventually

**NOT FOR PUBLICATION**

appeal to the Supreme Court. It is not appropriate for this Court to review the Superior Court's decision.

Furthermore, even if the plaintiff's complaint were somehow construed to state some independent claim beyond a mere review of the state court's decision, the <u>Younger</u> doctrine requires abstention.  Under the doctrine, federal courts must abstain from interfering with ongoing state court proceedings "[s]o long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 435 (1982).  Since the plaintiff contends that this is one of the issues currently on appeal before the Appellate Division and does not claim that she can not raise her constitutional violation in that Court, it would be inappropriate for this Court to render any sort of verdict on the issue of the appropriateness of withholding these documents before that appeal is resolved. <u>See</u> <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592 (1975)(holding that <u>Younger</u> continues to apply through the completion of all state appellate remedies).

Since this Court does not have jurisdiction to review the state decision, summary judgement is granted on the due process claim.

**III.    Qualified Immunity of Individual Defendants Sued in their Personal Capacities**

Qualified immunity shields state officials, including law enforcement officers, from personal liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The qualified immunity defense "provides ample protection to all but the plainly

**NOT FOR PUBLICATION**

incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341

(1986). "Whether an official protected by qualified immunity may be personally liable for an

unlawful official action generally turns on the 'objective legal reasonableness' of the action."

Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quoting Harlow, 457 U.S. at 819).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of

litigation." Saucier v. Katz, 533 U.S. 200, 201 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511,

526 (1985)). The privilege is "an immunity from suit rather than a mere defense to liability; and

like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."

Id.

Whether an officer is entitled to qualified immunity is a question of law determined by

the Court, and when that determination depends on disputed issues of fact, those facts must be

determined by a jury. Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).  A

defendant has the burden of establishing that he is entitled to qualified immunity. Kopec v. Tate,

361 F .3d 772, 776 (3d Cir. 2004).  The qualified immunity analysis is a two-step inquiry. The

Court must first "consider whether the facts alleged, taken in the light most favorable to the

plaintiff, show that the officer's conduct violated a constitutional right." Id.  The second step is to

determine whether the right was clearly established. Id.  If it "would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted" the officer can not avail

himself of the defense. Saucier, 533 U.S. at 202.  If, on the other hand, "the officer's mistake as

to what the law requires is reasonable, [ ] the officer is entitled to the immunity defense." Id. at

205. Qualified immunity operates "to protect officers from the sometimes 'hazy border between

excessive and acceptable force'" Id. at 206.

NOT FOR PUBLICATION

**A.     Officers Starzynski and Knighton**

As discussed earlier, looking at the facts in the light most favorable to the plaintiff, a reasonable jury could conclude that the Officers violated Ms. Herrera's rights when Officer Starzynski used excessive force in searching Ms. Herrera and when Officer Knighton stood by without intervening. The next step in the inquiry is then whether it "would be clear to a reasonable officer that [this] conduct was unlawful in the situation." Saucier, 533 U.S. at 202. Without a determination as to how excessive the force used by Starzynski was, this Court can not determine whether a reasonable officer would have believed that degree of force was unconstitutional. Similarly, without a determination as to whether Officer Knighton observed Starzynski's unconstitutional acts and had the opportunity to intervene, the Court can not determine whether a reasonable officer would have known that her failure to intervene was unconstitutional  The jury must decide these disputed factual issues before this Court can determine whether or not the officers are entitled to qualified immunity. See Monteiro, 426 F.3d at 405; Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir.1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.").

**B.     Police Director Catenese**

If the evidence is viewed in the light most favorable to Ms. Herrera, a reasonable injury could conclude that Director Catenese's failure to supervise officers that he was aware had been involved in a pattern of constitutional violations led to Ms. Herrera's constitutional injury. The question is then whether a reasonable police director would have known that supervising officers, with these types of records, in the manner that he did, violated the Constitution.  This requires,

**NOT FOR PUBLICATION**

among other things, factual determinations about the quality of Catenese's supervision, the records of the officers in question, and Catenese's awareness of these records. Too many underlying factual issues are in dispute for the Court to be able to make this determination at this time. A jury must make these determinations before the Court can decide whether Director Catenese is entitled to immunity. Id.

      **C.**      **Officers Hayes and Santiago**

      The only claims that the plaintiff continues to pursue against Officers Hayes and Santiago are based on the fact that they stopped, detained and questioned her without any justification. Since the Court is granting summary judgment on all claims stemming from stop, detaining and questioning of Ms. Herrera, there are no remaining claims against Officers Hayes and Santiago and there is no need to evaluate whether they are entitled to qualified immunity.

**IV.**      **State Law Claims**

      **A.**      **Claims are not barred by *Res Judicata***

      The defendants argue that the claims that Officer Starzynski "did intentionally, purposefully and maliciously assault and batter" the plaintiff (Count Five) and that he "did negligently or recklessly assault and batter her" (Count Six) should be dismissed because Starzynski's acquittal of the charge of assault should have *res judicata* effect on the claims.

      In order for *res judicata* to apply there must be (1) a final judgment by a court of competent jurisdiction, (2) identity of the issues, (3) identity of the parties, and (4) identity of the cause of action. Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 318-19 (App. Div. 2002). A criminal acquittal is not a bar against a subsequent civil suit. Twp. of East Habover v. Cuva, 156 N.J. Super. 159, 163 (App. Div. 1978). The issues are not identical. In the

NOT FOR PUBLICATION

criminal proceeding the question was whether the prosecution had shown beyond a reasonable doubt that Officer Starzynski was guilty of the crime of assault. Here, the question is whether Ms. Herrera has shown by a preponderance of the evidence that he is civilly liable for an assault and battery. Not only are the standards for liability different, so are the parties, Ms. Herrera was not a party to the criminal prosecution of Officer Starzynski. The defendant's *res judicata* argument is rejected.

> **B.      Tort Claims Act Bars State Law Claims Against the City of New Brunswick**

The New Jersey Tort Claims Act provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10. In the case at hand, the state law claims of assault and battery are the types of claims which are barred under this provision of the Act. See McDonough v. Jorda, 214 N.J. Super. 338, 350 (App. Div. 1986) (holding that City is not vicariously liable for assault and battery committed by police officer).  The plaintiff offers no opposition to this defense. Summary judgment is granted on the state law claims against the City of New Brunswick.

> **C.      Claims Against the Individual Defendants Are Not Barred by the Tort Claims Act**

The New Jersey Tort Claims Act provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." N.J.S.A. 59:3-3. The defendants claim that this provision bars the state law claims of battery against the individual defendants.  In order to be granted immunity for actions under this provision, a public employee must demonstrate either "objective reasonableness" or that he behaved with "subjective good faith." Alston v. City of Camden, 168 N.J. 170, 178 (2001). Whether the officers acted with

NOT FOR PUBLICATION

"objective reasonableness" or "subjective good faith" is a similar question to the question of

whether the officers are entitled to qualified immunity. It too requires jury determinations about

the disputed underlying facts of the incident. Based on the facts advanced by the plaintiff in

support of her claims, a reasonable jury could conclude that the officers did not act with

"objective reasonableness."  The state law claims against the individual defendants are not barred

by the Tort Claims Act.

> **D.  Recovery of Damages for Pain and Suffering is Barred by the Tort Claims Act**

Under N.J.S.A. 59:9-2(d), a plaintiff can not recover damages for pain and suffering from

either a public entity or a public employee unless the plaintiff has suffered "permanent loss of a

bodily function, permanent disfigurement or dismemberment where the medical treatment

expenses are in excess of $3,600.00." N.J.S.A. 59:9-2(d).  The plaintiff has not alleged that she

has suffered permanent injury and her medical bills total only $1130.80.  In opposition, the

plaintiff does not dispute that pain and suffering damages are barred the Act, instead she argues

that "damages for infringement upon [her] quality of life are not barred by the Act, as they do not

represent pain and suffering."  In support, the plaintiff cites Ayers v. Jackson, 202 N.J. Super.

106 (App. Div. 1985). However, in affirming the Appellate Division's decision in that case, the

Supreme Court distinguished between "damages for pain an suffering resulting from an injury

[which are] intended to apply to intangible, subjective feelings of discomfort associated with

personal injuries," and are barred by N.J.S.A. 59:9-2(d), and "claims for inconvenience

associated with the invasion of a property interest," which are not so barred. Ayers v. Jackson,

106 N.J. 557, 571 (1987).  The ability to recover damages for infringement upon quality of life is

derived from the law of nuisance and "represent[s] compensation for losses associated with

NOT FOR PUBLICATION

damage to property." <u>Id.</u> at 571-72.  Ms. Herrera has not claimed any such injury to any property interest.  Recovery of damages for pain and suffering is barred by the Tort Claims Act.

**V.      Recovery of Punitive Damages**

Recovery of punitive damages from a public entity is barred by the Tort Claims Act. N.J.S.A. 59:9-2(c). The plaintiff does not dispute this fact. All claims for punitive damages against the City of New Brunswick are dismissed.

Punitive damages against the individual defendants "are available where the defendants have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others." <u>Keenan v. City of Phila.</u>, 983 F.2d 459, 469-70 (3d Cir.1993) (quotations and citations omitted); <u>see also</u> <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983)(citing Restatement (Second) of Torts § 908(2) (1979)). Such damages are "reserved [ ] for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." <u>Id.</u> at 470 (quotations and citations omitted). "The focus is on the tortfeasor's conduct – whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." <u>Smith</u>, 461 U.S. at 54.

As no claims remain against Officers Santiago and Hayes, the plaintiff can not recover punitive damages from them.  However, with respect to Officers Starzynski and Knighton and Director Catenese there remain issues of material fact requiring jury determination before the Court can determine whether these defendants acted with "reckless or callous disregard of, or indifference to, the rights and safety of" Ms. Herrera. See <u>Kennan</u>, 983 F. 2d at 469-70. Summary judgment is denied on the punitive damages claims with respect to Defendants

**NOT FOR PUBLICATION**

Starzynski, Knighton and Catenese.  It is granted with respect to Defendants City of New

Brunswick, Santiago and Hayes.

**CONCLUSION**

For the foregoing reasons, the defendants' motions for summary judgment are granted

with respect to all claims against Defendants Santiago and Hayes and the state law and punitive

damages claims against Defendant City of New Brunswick. The motions are also granted with

respect to the § 1983 claims based on equal protection violation, illegal stop, illegal search, and

due process violation allegations.  The motions are denied with respect to the § 1983 claims

based on the use of excessive force, the failure to train and supervise the officers, and bystander

liability against Officer Knighton. The motions are also denied with respect to the state law and

punitive damages claims against the individual defendants. The action is stayed with respect to

the § 1983 malicious prosecution and false arrest claims pending the resolution of the appeal to

the New Jersey Appellate Division of Ms. Herrera's conviction

s/William H. Walls                    
United States Senior District Judge

**Appearances**

Patricia Bombelyn, Esq.
Perez & Bombelyn, P.C.
402 Livingston Avenue
New Brunswick , NJ 08901

Ida Cambria, Esq.
142 Livingston Avenue, 3rd Floor
New Brunswick , NJ 08901
   Attorneys for Plaintiff Ana Herrera

**NOT FOR PUBLICATION**

Susan O'Connor, Esq.
Hoagland, Longo, Moran, Dunst & Doukas, LLP
40 Paterson Street
PO Box 480
New Brunswick , NJ 08903
 Attorney for Defendant Police Director Joseph Catanese

William R. Connell, Esq.
Dwyer Connell & Lisbona
100 Passaic Avenue
PO Box 629
Fairfield, NJ 07004
 Attorney for Defendant Officer Anthony Starzynski

Lawrence Y. Bitterman, Esq.
247 Livingston Avenue
New Brunswick , NJ 08901
 Attorney for Defendant Starzynski on punitive claims

Lori A. Dvorak, Esq.
Dvorak & Associates, LLC
390 George Street, 8th Floor
New Brunswick , NJ 08901
 Attorney for Defendant City of New Brunswick

John R. Parker, Esq.
260 Route 202, Suite 1100
Flemington, NJ 08822-1794
 Attorney for Defendants Officers James Hayes and Pam Knighton

Michael John Stone, Esq.
The Stone Law Group
20 Glenview Drive
Warren, NJ 07059
 Attorney for Defendant Officer Santiago